**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINA POPP, | ) | |
| | ) | CASE NO.    1:13-cv-01338 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Christina Popp ("Popp") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On April 1, 2010, Popp filed an application for POD, DIB, and SSI alleging a disability

onset date of November 1, 2009. (Tr. 27.) Her application was denied both initially and upon reconsideration. Popp timely requested an administrative hearing.

On November 10, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Popp, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 27.) On December 5, 2011, the ALJ found Popp was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 36-37.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 35 at the time of her administrative hearing, Popp is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). Popp has at least a high school education and past relevant work as a customer service representative and secretary. (Tr. 35.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Popp was insured on her alleged disability onset date, November 1, 2009, and remained insured through the date of the ALJ's decision, December 5, 2011 . (Tr. 29.) Therefore, in order to be entitled to POD and DIB, Popp must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Popp established medically determinable, severe impairments, due to seizure disorder, headaches, chronic obstructive pulmonary disease (COPD), and depression. (Tr. 29.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 30.) Popp was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

("RFC") for a full range of work at all exertional levels with some non-exertional limitations. (Tr. 31, 35.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Popp was not disabled. (Tr. 36.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing*

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

*Listing 11.03*

In her first assignment of error, Popp argues that the ALJ erred in the Step Three analysis with respect to Listing 11.03. (ECF No. 17 at 15-16.)

    The relevant listing provides as follows:

> 11.03 Epilepsy -- nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, App. 1.

    At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531 at * 3 (6th Cir. June 7, 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or equals the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

    Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). However, a claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). **An ALJ must compare the medical evidence with the requirements for listed impairments**

**in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment**. *See Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 3-4 (6th Cir. April 1, 2011) (emphasis added); *Hunter v. Comm'r of Soc. Sec.*, 2011 WL 6440762 at * 3-4 (N.D. Ohio Dec. 20, 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *See Reynolds,* 2011 WL 1228165 at * 4-5; *Marok v. Astrue*, 2010 WL 2294056 at *3 (N.D. Ohio Jun. 3, 2010); *Waller v. Comm'r of Soc. Sec.*, 2012 WL 6771844 at * 3 (N.D. Ohio Dec. 7, 2012); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012).

Here, the ALJ found that Popp suffered from a seizure disorder, as it was included among Popp's severe impairments. (Tr. 29.) On April 27, 2009, neurologist Gary Kutsikovich, M.D., noted that electroencephalography (EEG) performed a few days earlier revealed intermittent right temporal sharp waves, "which may be consistent with the diagnosis of complex partial seizure disorder." (Tr. 543.) On March 1, 2010, neurologist Norman So, M.D., indicated that magnetic resonance imaging (MRI) revealed relative atrophy of the right hippocampus, which he believed may support a diagnosis of right temporal epilepsy. (Tr. 526.) According to Dr. So, a second MRI performed on October 22, 2009 revealed a "formal report normal," but he indicated that the images themselves revealed the right hippocampus was flattened with enlarged right temporal horn.[2] (Tr. 737.) Dr. So's impression was "presumed Focal epilepsy, with complex partial seizures. Repeat MRI Head ... may support a diagnosis of R temporal epilepsy." (Tr. 739.) On several occasions, Dr. Kostikovich noted that Popp and her mother both reported

---

[2] The ALJ explicitly mentions the "normal" results of this MRI in his RFC analysis, but ignores Dr. So's medical opinion as to the import of the images. (Tr. 33.)

7

several episodes of altered awareness per week. (Tr. 538-40.) On May 3, 2010, Dr. So noted a seizure frequency of 4-6 per month. (Tr. 737.)

The Commissioner maintains that substantial evidence supports the ALJ's finding that Popp did not meet or equal Listing 11.03. (ECF No. 19 at 14-17.) Significantly, the Commissioner's argument does not discuss whether the ALJ's Step Three analysis complied with Sixth Circuit law cited above. *Id*. Furthermore, much of the Commissioner's argument consists of a *post hoc* analysis of the requirements of Listing 11.03 and citations to the medical record which, she argues, supports a finding that the requirements were not met. *Id*. Unfortunately, the ALJ did not include any meaningful analysis at Step Three and the Court cannot engage in *post hoc* rationalizations. *See S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (a reviewing court must judge the propriety of agency action "solely by the grounds invoked by the agency"). As this Court has previously observed, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Waller*, 2012 WL 6771844 at * 3. *See also May*, 2011 WL 3490186 at * 9. While the Commissioner may ultimately be correct that Popp does not suffer from a listing level impairment, this Court cannot make such a determination without an appropriate Step Three analysis. In his opinion, the whole of the ALJ's Step Three analysis is as follows:

> I have reviewed the claimant's seizure impairment under Section 11.03. Section 11.03 requires the evidence to contain a description of a person's seizures that reveals alteration of awareness or loss of consciousness and transient postical manifestations of unconventional behavior or significant interference with activity during the day. The seizures must also occur more frequently than once weekly in spite of at least 3 months of prescribed treatment.

(Tr. 30.)

At Step Three, the ALJ was required to consider whether Popp's mental and physical impairments, alone or in combination, met or equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. With regard to Popp's seizure disorder, the ALJ did nothing beyond restating the requirements of the Listing. As the ALJ concluded no listing was met, the Court naturally presumes that one of the requirements was found to be lacking. The ALJ, however, does not point to any such deficiency and this Court can only guess as to why the listing was not satisfied. In other words, the ALJ did not *compare* the medical evidence with the requirements. While the Commissioner argues that other portions of the decision discuss some of the medical evidence concerning Popp's seizures, there remains a glaring absence of any explanation as to why the evidence failed to meet or equal the listing.

In *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x. 411, 2011 WL 1228165 (6th Cir. April 1, 2011), the Sixth Circuit explained the importance of the Step Three analysis:

> Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment . . . but did not do so.
>
> * * *
>
> The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.
>
> **In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.** Without it, it is

9

> impossible to say that the ALJ's decision at Step Three was supported by
> substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.
> 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v.
> Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000). As the Third
> Circuit explained, "[b]ecause we have no way to review the ALJ's
> hopelessly inadequate step three ruling, we will vacate and remand the case
> for a discussion of the evidence and an explanation of reasoning"
> supporting the determination that Reynolds' severe impairments do not
> meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

*Id.* at * 3-4 (emphasis added). Since *Reynolds*, numerous district courts have vacated and remanded ALJ decisions because of the failure to conduct a meaningful Step Three analysis which evaluates the medical evidence, compares it to the applicable listing, and provides an "explained conclusion" as to why the claimant's impairments fail to meet or equal a listed impairment. *See e.g. Waller v. Astrue*, 2012 WL 6771844 at * 2-5 (N.D. Ohio Dec. 7, 2012) *adopted*, 2013 WL 57046 (N.D. Ohio Jan. 3, 2013); *May v. Astrue*, 2011 WL 3490186 at * 7-10 (N.D. Ohio June 1, 2011) *adopted*, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012); *Hunter v. Astrue*, 2011 WL 6440762 at * 3- 4 (N.D. Ohio Dec. 20, 2011); *Marok v. Astrue*, 2010 WL 2294056 at * 5 (N.D. Ohio June 3, 2010) (finding ALJ's passing reference to ME testimony that claimant did not meet a Listing was insufficient to describe the reasons for his Step Three determination because "[t]o decipher what the medical expert said, the reader must travel back to the transcript – something not immediately accessible to the typical reader, including [claimant]"); *Hakkarainen v. Astrue*, 2012 WL 398595 at * 10-13 (N.D. Ohio Jan. 19, 2012) *adopted* 2012 WL 396970 (N.D. Ohio Feb. 7, 2012); *Shea v. Astrue*, 2012 WL 967088 at * 8-11 (N.D. Ohio Feb. 13, 2012) (finding Step Three analysis insufficient when ALJ mentioned, without describing, the findings and opinions of "treating or examining physicians" and "State agency medical consultants" to find claimant did

not meet Listing), *adopted* 2012 WL 967072 (N.D. Ohio Mar. 21, 2012).

In the instant case, the ALJ failed to sufficiently articulate how he reached his conclusion that Popp's seizure disorder did not meet or equal Listing 11.03. While the decision states that the ALJ considered the listing and recites the requirements, it did not compare those requirements with the medical evidence of record. Therefore, the Court cannot ascertain why the ALJ found Listing 11.03 was neither met nor equaled.[3] As such, the ALJ's discussion at Step Three was insufficient to satisfy the ALJ's duty to discuss the evidence and provide an "explained conclusion" per the holding in *Reynolds*.

Furthermore, the ALJ's failure to explain how he reached the conclusion that Popp's seizure disorder did not meet or medically equal a listing is not harmless error because, if Popp is found to meet a listed impairment, he would be disabled within the meaning of the regulations and entitled to benefits without any additional analysis. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Reynolds*, 2011 WL 1228165 at * 4. Moreover, without discussing the voluminous medical evidence, there does appear to be evidence that, if credited, could support a finding that Popp met or equaled the listing. As such, this is not a case where the record is devoid of any medical

---

[3] Even if the Court were to consider the discussion of the medical evidence at later steps in the sequential analysis, the basis for the ALJ's decision remains unclear. The rest of the opinion does not suggest that documentation of a detailed description of a typical seizure pattern is missing; that Popp's seizures did not persist in spite of at least three months of prescribed treatment; that Popp's seizures did not result in altered awareness *or* loss of consciousness; or, that either transient postictal manifestations of unconventional behavior *or* significant interference with activity during the day were lacking. At one point the ALJ did find, with rather minimal explanation, that the alleged frequency of Popp's seizures was not credible. (Tr. 33.) However, Popp has alleged as many as two to three, sometimes four, seizures per week. (Tr. 58-59.) The ALJ did not, however, indicate how many seizures, if any, he found to be credible. *Id*. As such, it is possible that the ALJ disbelieved Popp's testimony as to the higher frequency, while Popp met the listing requirement of more than one seizure per week. Under such circumstances, it is impossible to conduct a meaningful review.

evidence that might support a finding of listing-level severity.

Because the Court cannot discern the reasons for the ALJ's decision, this matter is remanded for a more thorough Step Three determination regarding Popp's seizure disorder.[4]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: April 16, 2014

---

[4] As the Court finds a remand is warranted, in the interests of judicial economy, Popp's other assignments of error will not be addressed.